92 A.2d 708 (1952)
In re BRANDYWINE FIBRE PRODUCTS CO.
Court of Chancery of Delaware, New Castle.
December 4, 1952.
Robert H. Richards, Jr. (of Richards, Layton & Finger), Wilmington, for petitioner, Leon K. Detwiler.
Albert L. Simon, Wilmington, for stockholder Clarence G. Hull.
SEITZ, Chancellor.
This is a stockholder's petition for a summary order calling a stockholders meeting to elect directors. The ground is that the Company failed to hold an annual meeting of stockholders for that purpose at or since the time fixed therefor in its by-laws.
The corporation here involved, Brandywine Fibre Products Company, has only two stockholders, the petitioner Leon K. Detwiler, who owns 30½ shares and Clarence G. Hull who owns 23½ shares.
*709 The by-laws provide for the holding of the annual stockholders meeting on the fourth Tuesday in May at which time they shall elect not less than three nor more than seven directors.[1] Under this provision the 1952 meeting should have been held on May 27, 1952. Both Detwiler and Hull concede that no stockholders meeting was held on that date or since that date for the purpose of electing directors. However, Hull contends that at a combined stockholders and directors meeting held February 28, 1951 the by-law in question was changed by oral agreement to provide for the holding of the annual meeting on the last day of February in each succeeding year. Hull's alternative contention is that the holding of alleged stockholders meetings at the end of February in 1950 and 1951 and in early March 1952 showed a course of conduct inconsistent with the written by-law and thereby in effect resulted in a change in the by-law. Detwiler denies both contentions. Let us examine them.
Hull first contends that pursuant to the oral change agreed upon at a meeting in February 1951, an annual stockholders meeting was held on or about March 7, 1952. Hull states that the 1952 annual meeting was held one week after the actual time when it should have been held under the alleged oral change of the by-laws because it suited the mutual convenience of the two stockholders.
It would serve no useful purpose to go into a long narration of the ups and downs of this Corporation. Hull came with the Company in 1949 as a consultant. At some time, who knows when, he became a director. In 1950 Hull was elected President and General Manager while Mr. Detwiler was elected Secretary and Treasurer. Both were directors. As far as appears they hold those positions at the present time. No corporate minutes were kept after the directors meeting of February 28, 1950, and so the issue  whether the annual stockholders meeting date was changed  must be resolved by a consideration and evaluation of the sharply conflicting testimony and the scanty documentary proof. To add to the problem, each time Hull and Detwiler met it could be called a stockholders meeting since they owned all the stock. But into every judicial life a little rain must fall.
Since the by-laws fix an annual meeting date, and since the two stockholders are in dispute as to whether or not that date was changed by mutual agreement, it seems to me that Hull who contends the date was changed has the burden of proof. I realize, of course, that since the parties owned all the stock they could agree to a by-law change in this informal manner. Hull makes much of the fact that Detwiler was Secretary and failed to write up the minutes showing the by-law change. However, this alleged criticism assumes the very point to be decided, viz., whether there was a meeting on February 28, 1951 at which Detwiler and Hull agreed to amend the by-law provision.
As is not unusual in a closely held corporation, the affairs of this Company were conducted without much formality. In consequence, the two stockholders met informally many, many times and either by oral agreement or tacit understanding disposed of much of the business.
With this background in mind I now approach the question as to whether or not the parties agreed on February 28, 1951 to an amendment of the by-laws changing the annual meeting date as suggested by Hull. Hull says they did and Detwiler says they didn't. As stated, there is nothing in the minute book to indicate that any meeting was held on February 28, 1951, or that a meeting was held on March 7, 1952.
Mr. Detwiler testified that no meeting took place on February 28, 1951. He testified that no such meeting with Mr. Hull could have taken place because Mr. Hull was in Florida. Detwiler was able to support his testimony by a reference to his day book which was admitted without objection and which showed an entry on Sunday, February 25, 1951 to the effect that Hull was leaving for a two-week vacation. Hull *710 denies that he was away on February 28, 1951. Mr. Detwiler also testified that on the day in question he was visiting customers in connection with his work as a manufacturer's sales agent. His day book provides some corroboration of this testimony.
Hull argues in effect that the holding of a stockholders meeting on or about March 7, 1952 at which time Hull contends that only two directors, he and Detwiler, were elected, is the best evidence that a change of date was agreed to in February 1951. Detwiler denies that there was any such meeting. The occurrence of such a meeting would, of course, be valuable though far from conclusive evidence that the parties did agree in a prior year to amend the by-laws to change the annual meeting date. What is Detwiler's position? He and his wife both testified that on March 7, 1952 Detwiler was at home in bed with the grippe. Hull's counsel in the pleadings takes the position that the meeting was held on March 7, 1952. He seems now to seek to suggest that the meeting could have been on March 4. He does this apparently because Detwiler's day book shows that Detwiler was in Wilmington all day on March 4, 1952. Passing over this slight shift in position I nevertheless believe that the evidence concerning the alleged February 28, 1951 and the March 7, 1952 meetings leaves the matter in such a state that I conclude that Hull has failed to sustain the burden of showing that the admitted by-law provision was changed. Even if the matter be viewed apart from any question of burden, I believe the evidence does not fairly support the conclusion that the date was changed. I believe the parties did pretty much as they pleased, when they pleased. Unfortunately they parted company and so I prefer to rest the decision on the firmer ground of the recorded by-laws.
Hull's counsel next argues that a course of conduct showing a new meeting date was established by virtue of the fact that the annual meetings were held in February of 1950 and 1951 and in March of 1952. Compare In re Ivey & Ellington, Inc., 28 Del.Ch. 298, 42 A.2d 508. The short answer to this contention is that I am unable to conclude as a matter of fact that such stockholders meetings took place in the years 1951 or 1952.
I conclude therefore, that Hull has failed to satisfy this court that the written by-law provision fixing the annual stockholders meeting for the fourth Tuesday in May was changed. Since no such meeting was held on that date or since that date, it follows that a stockholders meeting should be held for the purpose of electing a board of not less than three or more than seven directors for the year commencing May 27, 1952.
In view of my conclusion it becomes unnecessary to consider the effect of an election of less than three directors as required by Section 9 of the Delaware Corporation Law, Rev.Code 1935, § 2041.
Since there are only two stockholders, both of whom are here represented, the order to be entered hereon may provide for an election before a master on short notice.
Order on notice.
NOTES
[1] The by-law is not clear whether it is five or seven but that is not important here.